# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CASE NO.: _____

WESCO INSURANCE COMPANY,

      Plaintiff,

v.

GLOBAL CLOSING COMPANY, LLC, BENJAMIN BELL, FIRST AMERICAN TITLE INSURANCE COMPANY, SEACOAST NATIONAL BANK, and SOUTH FLORIDA INNOVATION AND DESIGN, LLC,

      Defendants.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Wesco Insurance Company ("Wesco"), by and through undersigned counsel, and pursuant to 28 U.S.C. § 2201, hereby sues Defendants, Global Closing Company, LLC; Benjamin Bell; First American Title Insurance Company; Seacoast National Bank; and South Florida Innovation and Design, LLC; and alleges:

## INTRODUCTION

1.    In this proceeding, Wesco seeks a declaration that it does not owe a continuing duty to defend nor any duty to indemnify the Defendants, Global Closing

Company, LLC, and Benjamin Bell, in four separate but related civil actions: (1) *First American Title Insurance Company v. Jonathan Yasko, et al.*, Case No. 2022-CA-001356, pending in the Eighteenth Judicial Circuit Court in Seminole County, Florida (the "First American Title Action"), (2) *AmTrust Title Insurance Company v. Global Closing Company, LLC, et al.*, Case No. 50-2022-CA-008473, pending in the Fifteenth Judicial Circuit Court in Palm Beach County, Florida (the "AmTrust Title Action"), (3) *Seacoast National Bank v. Global Closing Company, LLC, et al.*, Case No. CACE-22-018000, pending in the Seventeenth Judicial Circuit Court in Broward County, Florida (the "Seacoast Bank Action"), and (4) *South Florida Innovation and Design, LLC v. Global Closing Company, LLC, et al.*, Case No. CACE-22-018646, pending in the Seventeenth Judicial Circuit Court in Broward County, Florida (the "Innovation & Design Action"). The First American Title Action, the AmTrust Title Action, the Seacoast Bank Action, and the Innovation & Design Action will be referred to herein as the "Escrow Account Litigation."

2.     As discussed in greater detail below, the Escrow Account Litigation arises out of the same alleged wrongful acts and/or interrelated wrongful acts committed by Global Closing Company, LLC and Benjamin Bell (collectively, "Global Closing") as the escrow agent on real estate transactions. In each of the four actions within the Escrow Account Litigation, Global Closing is alleged to have unlawfully withheld the escrow funds and/or disbursed the escrow funds to third

parties (who had no valid claim to the funds), resulting in the injured parties filing lawsuits against Global Closing for damages, equitable relief, interest, costs, and legal fees.

3.　　Wesco issued a Commercial Liability Policy to Global Closing Company, LLC, for the policy period of July 26, 2021 to July 26, 2022, with limits of $1 million per claim and in the aggregate (the "2021 Policy"). Wesco thereafter issued a Commercial Liability Policy to Global Closing Company, LLC, for the policy period of July 26, 2022 to July 26, 2023, with limits of $1 million per claim and in the aggregate (the "2022 Policy").

4.　　There is a justiciable controversy relating to the rights and duties of the parties. Global Closing contends that Wesco is required to defend and indemnify Global Closing under the 2021 Policy and the 2022 Policy in the Escrow Account Litigation while Wesco contends, for the reasons set forth below, that Wesco has no continuing duty to defend nor any duty to indemnify Global Closing in the Escrow Account Litigation.

## THE PARTIES

5.　　Plaintiff, Wesco, is a Delaware corporation with its principal place of business in New York and, therefore, Wesco is a citizen of Delaware and New York.

6.      Defendant, Global Closing Company, LLC, is a Florida limited liability company, consisting of a single member/manager, Benjamin Bell, who is a citizen of Florida and, therefore, Global Closing Company, LLC, is a citizen of Florida.

7.      Defendant, Benjamin Bell, is an individual and a citizen of Florida.

8.      Defendant, First American Title Insurance Company ("First American"), is a Nebraska corporation with its principal place of business in California and, therefore, First American is a citizen of Nebraska and California. First American is included as a defendant in this action in order to bind it to the result of this action.

9.      Defendant, Seacoast National Bank ("Seacoast Bank"), is a national banking association with its principal place of business in Florida and, therefore, Seacoast is a citizen of Florida. Seacoast is included as a defendant in this action in order to bind it to the result of this action.

10.     Defendant, South Florida Innovation & Design, LLC ("Innovation & Design"), is a Florida limited liability company, consisting of a single member/manager, Rodrigo Lima, who is a citizen of Florida and, therefore, Innovation & Design is a citizen of Florida. Innovation & Design is included as a defendant in this action in order to bind it to the result of this action.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this matter based on diversity of citizenship under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and the Defendants and the amount in controversy exceeds $75,000, exclusive of interest, costs, and legal fees.

12.     This Court has personal jurisdiction over the Defendants because the Defendants reside in Florida and/or conduct substantial business in Florida, including the matters that gave rise to the Escrow Account Litigation.

13.     Venue is proper in the United States District Court of the Middle District of Florida under 28 U.S.C. § 1391 because the events that gave rise to this matter occurred within this District.

14.     Pursuant to Local Rule 1.04(b), this matter is properly instituted in the Orlando Division of the Middle District of Florida as Seminole County is the county of origin of this case.

## THE ESCROW ACCOUNT LITIGATION

**A.     The First American Title Action**

15.     On June 13, 2022, the Plaintiffs, First American and Title Resources Guaranty Company, filed a Complaint against the Defendant, Global Closing Company, LLC, (among other co-defendants), in the Eighteenth Judicial Circuit Court in Seminole County, Florida. On June 23, 2022, the Plaintiff, Title Resources

Guaranty Company, voluntarily dismissed all of its claims without prejudice. A true and correct copy of the Complaint is attached as Exhibit A.

16.     In the Complaint, First American alleges that Global Closing Company, LLC, operates a title insurance agency that conducts real estate closings for buyers, sellers, refinancing owners, and other interested parties. *See* Ex. A, Compl. at ¶ 15. In this role, Global Closing Company, LLC, collects title insurance premiums and issues title insurance binders, policies, and endorsements on forms provided by, and underwritten by, First American. *Id.* at ¶ 14.

17.     First American alleges that Global Closing Company, LLC, would receive trust funds from parties involved in the real estate closings and was required to disburse those funds as directed by the parties who provided the funds. *Id.* at ¶ 15. On or about May 9, 2022, First American began reviewing the escrow account balances maintained by Global Closing Company, LLC, and discovered a significant shortage of funds in the escrow accounts. *Id.* at ¶ 20.

18.     First American alleges that innocent homeowners and lenders transferred funds to Global Closing Company, LLC, for real estate closings, and rather than disburse the funds as directed by those parties, Global Closing Company, LLC, diverted the funds to third parties who had no valid claim to the funds. *Id.* at ¶ 22. First American alleges that management for Global Closing Company, LLC, did

not respect corporate formalities and used the funds received for the real estate transactions for their own personal benefit or other improper purposes. *Id.* at ¶ 24.

19.     First American asserts causes of action against Global Closing Company, LLC, for: (1) Breach of Agency Agreement; (2) Injunctive Relief; and (3) Negligent Supervision. *Id.* at ¶¶ 27-32, 39-43, and 47-51. First American seeks the entry of a judgment against Global Closing Company, LLC, for damages, injunctive relief, interest, costs, and legal fees. *Id.*

**B.     The AmTrust Title Action**

20.     On October 27, 2022, the Plaintiff, AmTrust Title Insurance Company ("AmTrust Title"), filed an Amended Complaint against the Defendants, Global Closing Company, LLC, and Benjamin Bell, (among other co-defendants), in the Fifteenth Judicial Circuit Court in Palm Beach County, Florida. A true and correct copy of the Amended Complaint is attached as Exhibit B.

21.     In the Amended Complaint, AmTrust Title alleges that Global Closing Company, LLC, operates a title insurance agency that conducts real estate closings for buyers, sellers, refinancing owners, and other interested parties. *See* Ex. B, Am. Compl. at ¶¶ 10, 17-30. In this role, Global Closing Company, LLC, collects title insurance premiums and issues title insurance binders, policies, and endorsements provided by AmTrust Title. *Id.* at ¶ 9.

22.    AmTrust Title alleges that on or about July 21, 2022, Global Closing Company, LLC, conducted a real estate closing where the property owner, Innovation & Design, intended to refinance a mortgage held by BCIF Holdings I, LLC, with a new mortgage to be provided by Seacoast. *Id.* at ¶ 17. On or about June 28, 2022, Global Closing Company, LLC, received a payoff letter for the mortgage held by BCIF Holdings I, LLC, reflecting a payoff total of $704,322.00. *Id.* at ¶¶ 18-19.

23.    AmTrust Title alleges that Global Closing Company, LLC, prepared the settlement statement for the closing, which was signed by Benjamin Bell as the title agent, stating that Innovation & Design was to contribute $23,423.50 and Seacoast was to contribute $700,000.00 at the closing to satisfy the existing mortgage on the property. *Id.* at ¶¶ 20-21, 26. AmTrust Title alleges that Global Closing Company, LLC, received the funds to satisfy the mortgage but did not pay off the mortgage. *Id.* at ¶¶ 27-32.

24.    AmTrust Title alleges that Global Closing Company, LLC, and Benjamin Bell converted and/or misappropriated the funds for the closing, circulating a "marked up" title commitment that falsely reflected the mortgage had been satisfied. *Id.* at ¶¶ 35-36. AmTrust Title alleges on August 12, 2022, approximately three weeks after the closing, Benjamin Bell emailed Rodrigo Lima of Innovation & Design, stating that:

We had fraud on our escrow account, and they wiped it out. We're working to get it back, but it shorted us from paying the payoff. It's a nightmare but the good news is you are protected by our underwriter Amtrust, and they will take care of the payoff payment. You just have to go through the claim filing. I sent Heather the info earlier to expedite the claim.

I am sorry this happened, but I assure Amtrust will cover. This is why they issue title insurance for crazy scenarios like this.

I can call later this evening and explain more.

*Id.* at ¶ 40.

25.     AmTrust Title alleges on June 13, 2022, more than one month prior to the closing, First American had filed the First American Title Action against Global Closing Company, LLC, alleging in that earlier action that funds in excess of $1,976,000.00 had been improperly disbursed from Global Closing Company, LLC's escrow accounts, demonstrating the existence of the alleged fraud – and Benjamin Bell's known shortage of funds in the escrow accounts – prior to the real estate closing in the AmTrust Title Action. *Id.* at ¶¶ 44-45.

26.     AmTrust Title asserts causes of action against Global Closing Company, LLC, for: (1) Breach of Agency Agreement; and (2) Breach of Fiduciary Duty. *Id.* at ¶¶ 53-62. AmTrust Title asserts causes of action against Benjamin Bell for: (1) Fraud; (2) Negligence; and (3) Tortious Interference with Advantageous Business Relationship. *Id.* at ¶¶ 64-81.

27.    AmTrust Title seeks the entry of a judgment against Global Closing Company, LLC, and Benjamin Bell for damages, the establishment of a constructive trust, interest, costs, and legal fees. *Id.* at ¶¶ 53-81.

**C.    The Seacoast Bank Action**

28.    On December 1, 2023, the Plaintiff, Seacoast Bank, filed a Second Amended Complaint against the Defendants, Global Closing Company, LLC, and Benjamin Bell, (among other co-defendants), in the Seventeenth Judicial Circuit Court in Broward County, Florida. A true and correct copy of the Second Amended Complaint is attached as Exhibit C.

29.    In the Second Amended Complaint, Seacoast Bank alleges that Global Closing Company, LLC, operates a title insurance agency that conducts real estate closings for buyers, sellers, refinancing owners, and other interested parties. *See* Ex. C, 2nd Am. Compl. at ¶ 10. In this role, Global Closing Company, LLC, collects title insurance premiums and issues title insurance binders, policies, and endorsements as the authorized agent of AmTrust Title. *Id.*

30.    Seacoast Bank alleges that it entered into an agreement with Innovation & Design to re-finance an existing mortgage on a parcel of property owned by Innovation & Design. *Id.* at ¶ 9. Pursuant to the agreement, Seacoast Bank would lend money to Innovation & Design, which would be entrusted to Global Closing

Company, LLC, as the title/closing agent on the transaction who was responsible for paying off the existing mortgage on the property. *Id.* at ¶ 10.

31.     Seacoast Bank alleges that it agreed to loan Innovation & Design $700,000.00, which alongside a contribution from Innovation & Design, would pay off the existing mortgage on the property. *Id.* at ¶ 11. On or about July 22, 2022, the real estate closing took place and in reliance on the representations and requirements in the title insurance commitment and closing protection letter furnished by Global Closing Company, LLC, Seacoast Bank wired $700,000.00 to Global Closing Company, LLC's escrow account pursuant to the closing instructions. *Id.* at ¶ 12.

32.     Seacoast Bank alleges that Global Closing Company, LLC, failed to pay off the existing mortgage on the property as required in the title insurance commitment and closing protection letter, preventing Innovation & Design from satisfying the existing mortgage on the property. *Id.* at ¶¶ 14, 17-18. As a result, Seacoast Bank (among other things) made a demand on Global Closing Company, LLC, to return the $700,000.00 in funds. *Id.* at ¶¶ 18-19.

33.     Seacoast Bank asserts a cause of action against Global Closing Company, LLC, and Benjamin Bell for Breach of Fiduciary Duty, seeking the entry of a judgment against them for compensatory damages, interest, costs, and legal fees. *Id.* at ¶¶ 23-29.

**D.     The Innovation & Design Action**

34.     On December 19, 2022, the Plaintiff, Innovation & Design, filed a Complaint against the Defendants, Global Closing Company, LLC, and Benjamin Bell, in the Seventeenth Judicial Circuit Court in Broward County, Florida. A true and correct copy of the Complaint is attached as Exhibit D.

35.     In the Complaint, Innovation & Design alleges that it entered into an agreement with Global Closing Company, LLC, to serve as its escrow agent for the closing on its re-financing of the mortgage on its property. *See* Ex. D, Compl. at ¶ 6. Innovation & Design alleges that Global Closing failed to pay off the existing mortgage on its property despite receiving the funds and instructions to do so from Innovation & Design, leaving Innovation & Design obligated to pay on both mortgages encumbering its property. *Id.* at ¶ 9.

36.     Innovation & Design asserts causes of action against Global Closing Company, LLC, and Benjamin Bell for: (1) Specific Performance; (2) Breach of Agreement; (3) Civil Theft; (4) Conversion; (5) Money Received; (6) Replevin; (7) Constructive Trust; and (8) Fraud, Misrepresentation. *Id.* at ¶¶ 12-64. Innovation and Design seeks the entry of a judgment against them for compensatory damages, treble damages, specific performance, replevin, interest, costs, and legal fees. *Id.*

**THE 2021 POLICY**

37.     Wesco issued the 2021 Policy to Global Closing Company, LLC, for

the policy period of July 26, 2021 to July 26, 2022, with limits of $1 million per claim and in the aggregate. Benjamin Bell is an insured under the 2021 Policy. A true and correct copy of the Policy is attached as Exhibit E.

38.    The 2021 Policy contains an employee theft coverage extension endorsement that provides in relevant part as follows:

**I.    *Employee Theft***

**A.    *SECTION I – INSURING AGREEMENTS*** *of the Professional Liability Coverage Part is amended to add:*

**EMPLOYEE THEFT**

*The **Insurer** will pay the **Company** for loss discovered by an **Insured** of **Money, Securities,** and **Property** as a direct result of **Employee Theft**.*

**B.    *SECTION III – LIMIT OF LIABILITY AND RETENTION,*** *Subsection A. of the General Terms and Conditions Applicable to All Coverage Parts is amended to add the following:*

*The **Employee Theft** Limit of Liability shown in the SCHEDULE [$25,000] above is the most the **Insurer** will pay for all loss in connection with any **Employee Theft** during the **Policy Period**, regardless of the number of such **Employee Thefts** made against the **Insureds**. The limit described herein is a sublimit, included within, and not in addition to, the applicable Professional Liability Limit of Liability set forth in Item 4. of the Declarations Page.*

**C.    *The following definitions are added to* SECTION II – DEFINITIONS** *of the Professional Liability Coverage Part:*

> ***Employee Theft*** *means the unlawful taking of **Money, Securities,** or **Property** by an **Employee** to the deprivation of an* ***Insured****.*
>
> ***Money*** *means currency, coins, bank notes, Federal Reserve notes, checks, drafts, bullion and money orders.*

*See* Ex. E, Policy Change Endorsement, Form PL990236 0414.

39.    The 2021 Policy also contains a theft of funds coverage extension endorsement that provides in relevant part as follows:

**II.    *Theft of Funds Coverage Extension***

**A.    *SECTION I – INSURING AGREEMENTS*** *of the Professional Liability Coverage Part is amended to add the following Insuring Agreement:*

***THEFT OF FUNDS***

1. *The **Insurer** will pay on behalf of the **Insured**, **Loss** arising out of the loss of funds of others in the **Insured's** care, custody or control as a result of theft, stealing, conversion, misappropriation or **Social Engineering Fraud**; provided, however, coverage shall not apply to the theft, stealing, conversion, misappropriation of funds or **Social Engineering Fraud** by an **Insured** or by a **Person Affiliated With An Insured** or **Entity Affiliated With An Insured** or to loss of the **Insured's** own funds.*

. . .

3. *The **Insurer's** maximum liability for all **Loss** under this Insuring Agreement shall not exceed $100,000 regardless of the number of **Insureds** or **Claims**. Such limit of liability is part of, and not in addition to, the applicable Professional Liability Limit of Liability set forth in Item 4. of the Declarations.*

. . .

5. *This Insuring Agreement applies only to loss of funds first discovered and reported to the **Insurer** during the **Policy Period**, provided that no **Insured** had knowledge of the theft, stealing,*

*conversion or misappropriation of such funds prior to the effective date of this **Policy**.*

6. *As a condition precedent to the coverage afforded by this Insuring Agreement, the **Parent Company** shall give written notice to the **Insurer** as soon as practicable and in no event later than thirty (30) days after any **Insured** becomes aware of a loss of the funds of others in the care, custody or control of the **Insured**.*

*See* Ex. E, Policy Change Endorsement, Form PL990236 0414.

40. The 2021 Policy defines a "Person Affiliated With An Insured" as:

*Any person related to an **Insured** by birth, adoption, marriage, or civil union (including spouses, civil union partners, parents, grandparents, children, grandchildren, siblings, cousins, nieces, nephews, aunts or uncles.*

*See* Ex. E, Policy Change Endorsement, Form PL990236 0414.

41. The 2021 Policy defines an "Entity Affiliated With An Insured" as:

*Any entity controlled by an **Insured** or by a **Person Affiliated With An Insured** or any entity in which any **Insured** or a **Person Affiliated With An Insured** has or at any time had a legal or beneficial interest.*

*See* Ex. E, Policy Change Endorsement, Form PL990236 0414.

42. The 2021 Policy contains a professional services liability insuring agreement that provides as follows:

### SECTION I – INSURING AGREEMENTS

### B.1.   PROFESSIONAL SERVICES LIABILITY

*The **Insurer** will pay on behalf of the **Insured**, **Loss** resulting from a **Claim** first made during the **Policy Period** or extended Reporting Period (if exercised), for a **Wrongful Professional Services Act**.*

*See* Ex. E, Title Agents Endorsement, Form PL990236 0414.

43.    The 2021 Policy defines a "Loss" as:

**Loss** *means* **Defense Expenses** *and any amount the* **Insured** *is legally obligated to pay resulting from a* **Claim**, *including damages, judgments, settlements, punitive or exemplary damages or the multiple portion of any multiplied damage award (if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages), prejudgment and post judgment interest, and legal fees and expenses awarded pursuant to a court order or judgment.* **Loss** *shall not include:*

*1.  payroll or other taxes;*

*2.  criminal or civil fines or penalties imposed by law;*

*3.  any unpaid, unrecoverable or outstanding amounts resulting from a loan, lease or extension of credit to any* **Borrower**, *including unpaid, unrecoverable or outstanding amounts resulting from a loan, lease or extension of credit which has been sold as a participation to other financial institutions;*

*4.  costs to comply with any non-monetary or injunctive relief of any kind or any agreement to provide such relief, including but not limited to any damages, costs or expenses incurred in making an accommodation for any disabled person pursuant to the Americans with Disabilities Act or any similar federal, state or local laws, or in complying with any other federal, state or local laws of any kind;*

*5.  the depreciation (or failure to appreciate) in value of any investment product, including but not limited to securities, commodities, currencies, options or futures due to market fluctuation unrelated to any* **Wrongful Act**;

*6.  any restitution, disgorgement, or payment of similar payments including, but not limited to the return of fees, commissions or charges for the* **Company's** *services; or*

7.  *any matters which are uninsurable under the law pursuant to which this **Policy** shall be construed.*

*Where the **Company** reasonably determines that punitive, exemplary or multiple damages are insurable under the applicable law, the **Insurer** shall not challenge that interpretation of insurability.*

*See* Ex. E, Professional Liability Coverage Part, Form PL990163 0414.

44.     The 2021 Policy contains certain exclusions to insurance coverage that provide, in relevant part, as follows:

### SECTION III – EXCLUSIONS

**<u>Fraud/Illegal Profit and Violation of Law</u>** *– The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to:*

1.  *the gaining, of any profit, remuneration or pecuniary advantage to which such **Insured** is not legally entitled; or*

2.  *any fraudulent or criminal **Wrongful Act** with actual knowledge of its wrongful nature or with intent to cause damage by such **Insured**,*

*as evidenced by a final adjudication by a judge, jury or arbitrator in any proceeding.*

. . .

**<u>Lost Property</u>** *– The **Insurer** shall not be liable under Insuring Agreements B. or C. for **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to the actual physical loss of, or damage to, money, securities, property or other items of value in the care, custody or control of the **Company**, its correspondent bank or other authorized representative, including money, securities, property or other Items of value stored in a safe*

> *deposit box at, or in transit while in the care, custody or control of, the* **Company**, *its correspondent bank or other authorized representative.*

*See* Ex. E, Professional Liability Coverage Part, Form PL990163 0414.

45.     The 2021 Policy contains an endorsement with additional exclusions to

insurance coverage that provide, in relevant part, as follows:

> **SECTION III – EXCLUSIONS**, *Subsection A. of the Professional Liability Coverage Part is amended to add the following exclusions:*
>
> <u>**Anti-Trust / Deceptive Trade Practices**</u> – *The* **Insurer** *shall not be liable to pay any* **Loss** *in connection with any* **Claim** *made against any* **Insured** *arising from, based upon, or attributable to any actual or alleged violation of any laws, rules or regulations concerning anti-trust, restraint of trade, price fixing, copyright, deceptive trade practices, racketeering-influenced corrupt organizations, and conspiracies regarding the same.*
>
> . . .
>
> <u>**Escrow Instructions**</u> – *The* **Insurer** *shall not be liable to pay any* **Loss** *in connection with any* **Claim** *made against any* **Insured** *arising from, based upon, or attributable to any actual or alleged, willful or intentional failure on the part of any* **Insured** *to comply with escrow instructions or underwriting or binding authority.*
>
> . . .
>
> <u>**Misappropriation**</u> – *The* **Insurer** *shall not be liable to pay any* **Loss** *in connection with any* **Claim** *made against any* **Insured** *arising from, based upon, or attributable to any theft, stealing, conversion, commingling, embezzlement, or misappropriation of any kind of escrow, trust, mortgage or any other kind or type of money, funds, securities, property, assets, or any negotiable instruments or documents by any person; provided, however, that this exclusion shall not apply to* **Defense Expenses** *for any* **Insured** *who did not commit,*

*know or acquiesce in such **Wrongful Act** which is the basis of the **Claim**.*

*See* Ex. E, Policy Change Endorsement, Form PL990236 0414.

46.     The 2021 Policy's general terms and conditions set forth the limits of

liability as follows:

> ### SECTION III – LIMIT OF LIABILITY AND RETENTION
>
> . . .
>
> **C.   SINGLE LIMIT / RETENTION** – ***Claims*** *based upon or arising out of the same **Wrongful Act** or **Interrelated Wrongful Acts** committed by one or more **Insureds** shall be considered a single **Claim**, and only one Retention and Limit of Liability shall apply. Each such single **Claim** shall be deemed to be first made on the date the earliest of such **Claims** was first made, regardless of whether such date is before or during the **Policy Period**.*

*See* Ex. E, General Terms and Conditions, Form PL990158 0414.

47.     The 2021 Policy defines a "Wrongful Act," in relevant part, as a

"Wrongful Professional Services Act," which is defined as:

> *Any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by any **Insured** in the rendering of, or failure to render **Professional Services**.*

*See* Ex. E, Professional Liability Coverage Part, Form PL990163 0414.

48.     The 2021 Policy defines "Interrelated Wrongful Acts" as:

> ***Wrongful Acts*** *which have as a common nexus any fact, circumstance, situation, event, transaction or series of related facts, circumstances, situations, events or transactions.*

*See* Ex. E, General Terms and Conditions, Form PL990158 0414.

## THE 2022 POLICY

49.    Wesco issued the 2022 Policy to Global Closing Company, LLC, for the policy period of July 26, 2022 to July 26, 2023, with limits of $1 million per claim and in the aggregate. Benjamin Bell is an insured under the 2022 Policy. A true and correct copy of the 2022 Policy is attached as Exhibit F. The terms of the 2022 Policy are the same as the terms of the 2021 Policy for the purposes of this action.

50.    Wesco is defending Global Closing in the Escrow Account Litigation under a reservation of rights, including the right to seek a judgment that declares its defense and indemnity obligations under the 2021 Policy and the 2022 Policy.

## COUNT I: CLAIM FOR DECLARATORY JUDGMENT
### (No Continuing Duty to Defend Global Closing
### in the Escrow Account Litigation)

51.    Wesco adopts and re-alleges the allegations contained in paragraphs 1 through 50 as though fully set forth herein.

52.    The 2021 Policy's employee theft coverage extension endorsement has been exhausted through the payment of claim expenses in the Escrow Account Litigation.

53.    An actual, justiciable controversy has arisen over whether the 2022 Policy provides additional coverage for the claims asserted against Global Closing in the Escrow Account Litigation.

54.     Wesco contends that the 2022 Policy does not provide additional coverage for the claims asserted against Global Closing in the Escrow Account Litigation for the following reason:

(i)     Section III, Subsection C, of the 2021 Policy's general terms and conditions states that "Claims based upon or arising out of the same Wrongful Act or Interrelated Wrongful Acts committed by one or more Insureds shall be considered a single Claim, and only one Retention and Limit of Liability shall apply. Each such single Claim shall be deemed to be first made on the date the earliest of such Claims was first made, regardless of whether such date is before or during the Policy Period." *See* Ex. E, General Terms and Conditions, Form PL990158 0414.

(ii)     The 2021 Policy defines the term "Wrongful Act," in relevant part, as "any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by any Insured in the rendering of, or failure to render Professional Services." *See* Ex. E, Professional Liability Coverage Part, Form PL990163 0414.

(iii)     The 2021 Policy defines the term "Interrelated Wrongful Acts" as "Wrongful Acts which have as a common nexus any fact, circumstance, situation, event, transaction or series of related facts, circumstances, situations, events or transactions. *See* Ex. E, General Terms and Conditions, Form PL990158 0414.

(iv)    The claims asserted in the Escrow Account Litigation are based upon and arise out of the same alleged Wrongful Act or Interrelated Wrongful Acts. In each of these matters, Global Closing is alleged to have unlawfully withheld the escrow funds and/or disbursed the escrow funds to third parties (who had no valid claim to the funds), resulting in the injured parties filing suit against Global Closing for damages, interest, costs, and legal fees. These claims arise out of the same real estate transaction and/or series of real estate transactions that led to (or resulted from) the alleged fraudulent shortage of funds in Global Closing's escrow account. Thus, the Escrow Account Litigation constitutes a single Claim under the 2021 Policy and the Claim is considered first made during the policy period of the 2021 Policy. This means that the Escrow Account Litigation is subject to and shares the same limit of liability under the 2021 Policy and that there is no coverage for the Escrow Account Litigation under the 2022 Policy.

55.    Accordingly, Wesco contends that the 2022 Policy does not afford coverage (a defense or indemnity) for the claims alleged against Global Closing in the Escrow Account Litigation.

56.    There exists a bona fide actual, present and practical need for a declaration regarding coverage under the 2022 Policy and the rights and obligations of Wesco.

57.    The rights and obligations of Wesco under the 2022 Policy are dependent upon the facts and the law applicable to the facts affecting coverage under the 2022 Policy.

58.    Wesco, Global Closing, First American, Seacoast Bank, and Innovation & Design have an actual, present controversy in the subject matter described herein.

**WHEREFORE**, Plaintiff, Wesco Insurance Company, Inc., respectfully requests that this Court enter judgment in its favor and: (a) declare that Wesco owes no coverage obligations (defense or indemnity) to Global Closing Company, LLC, and Benjamin Bell under the 2022 Policy with respect to the Escrow Account Litigation; and (b) grant such other relief as the Court deems just, proper and equitable.

## COUNT II: CLAIM FOR DECLARATORY JUDGMENT
### (No Continuing Duty to Defend Global Closing
### in the Escrow Account Litigation)

59.    Wesco adopts and re-alleges the allegations contained in paragraphs 1 through 50 as though fully set forth herein.

60.    The 2021 Policy's employee theft coverage extension endorsement has been exhausted through the payment of claim expenses in the Escrow Account Litigation.

61.     An actual, justiciable controversy has arisen over whether the 2021 Policy and/or 2022 Policy provide additional coverage for the claims asserted against Global Closing in the Escrow Account Litigation.

62.     Wesco contends that the 2021 Policy and 2022 Policy do not provide additional coverage for the claims asserted against Global Closing in the Escrow Account Litigation for the following reasons:

(a)     The claims against Global Closing are not covered under the 2021 Policy's theft of funds coverage extension endorsement because the alleged theft, stealing, conversion and/or misappropriation of funds was performed by an Insured, a Person Affiliated with an Insured, and/or an Entity Affiliated with an Insured as these terms are defined under the Policy. *See* Ex. E, Policy Change Endorsement, Form PL990236 0414.

(b)     The claims against Global Closing seek damages that are not covered under the 2021 Policy's insuring agreement for professional services. The plaintiffs in the Escrow Account Litigation request payment based upon the return, restitution, and/or disgorgement of the funds provided to Global Closing. The Escrow Account Litigation therefore does not qualify as a potential obligation to pay a "Loss" as the term is defined under the 2021 Policy and, thus, does not qualify to trigger coverage under the 2021 Policy. *See* Ex. E, Professional Liability Coverage Part, Form PL990163 0414.

(c)     The claims against Global Closing are excluded from coverage under the 2021 Policy's insuring agreement for professional services because the plaintiffs in the Escrow Account Litigation allege damages based upon the loss of the funds provided to Global Closing. Under the 2021 Policy's exclusion for lost property, there is no coverage for any Loss arising from, based upon, or attributable to the actual physical loss of money in Global Closing's care, custody, or control. *See* Ex. E, Professional Liability Coverage Part, Form PL990163 0414.

(d)     The claims against Global Closing are excluded from coverage under the 2021 Policy's insuring agreement for professional services because the plaintiffs in the Escrow Account Litigation assert claims that arise out of an alleged shortage of funds in Global Closing's escrow account. Under the 2021 Policy's exclusion for deceptive trade practices, there is no coverage for any Loss arising from, based upon, or attributable to deceptive trade practices such as the Insured using the funds from a real estate transaction: (i) for personal gain, or (ii) to satisfy the obligation of another real estate transaction. *See* Ex. E, Policy Change Endorsement, Form PL990236 0414.

(e)     The claims against Global Closing are excluded from coverage under the 2021 Policy's insuring agreement for professional services because the plaintiffs in the Escrow Account Litigation assert claims that arise out of Global Closing's alleged failure to comply with escrow instructions. Under the 2021 Policy's

exclusion for escrow instructions, there is no coverage for any Loss arising from, based upon, or attributable to any actual or alleged, willful or intentional failure by an Insured to comply with escrow instructions. *See* Ex. E, Policy Change Endorsement, Form PL990236 0414.

63.    Accordingly, Wesco contends that the 2021 Policy and 2022 Policy do not provide a continuing duty to defend Global Closing in the Escrow Account Litigation.

64.    There exists a bona fide actual, present and practical need for a declaration regarding coverage under the 2021 Policy and the 2022 Policy, and the rights and obligations of Wesco.

65.    The rights and obligations of Wesco under the 2021 Policy and 2022 Policy are dependent upon the facts or the law applicable to the facts affecting coverage under the 2021 Policy and 2022 Policy.

66.    Wesco, Global Closing, First American, Seacoast Bank, and Innovation & Design have an actual, present controversy in the subject matter described herein.

**WHEREFORE**, Plaintiff, Wesco Insurance Company, respectfully requests that this Court enter judgment in its favor and: (a) declare that Wesco has no continuing obligation to defend Global Closing Company, LLC, and Benjamin Bell in the Escrow Account Litigation; and (b) grant such other relief as the Court deems just and proper.

## COUNT III: CLAIM FOR DECLARATORY JUDGMENT
### (No Duty to Indemnify Global Closing in the Escrow Account Litigation)

67.     Wesco adopts and re-alleges the allegations contained in paragraphs 1 through 50 as though fully set forth herein.

68.     The 2021 Policy's employee theft coverage extension endorsement has been exhausted through the payment of claim expenses in the Escrow Account Litigation.

69.     An actual, justiciable controversy has arisen over whether the 2021 Policy and/or 2022 Policy provide additional coverage for the claims asserted against Global Closing in the Escrow Account Litigation.

70.     Wesco contends that the 2021 Policy and 2022 Policy do not provide additional coverage for the claims asserted against Global Closing in the Escrow Account Litigation for the following reasons:

(a)     The claims against Global Closing are not covered under the 2021 Policy's theft of funds coverage extension endorsement because the alleged theft, stealing, conversion and/or misappropriation of funds was performed by an Insured, a Person Affiliated with an Insured, and/or an Entity Affiliated with an Insured as these terms are defined under the 2021 Policy. *See* Ex. E, Policy Change Endorsement, Form PL990236 0414.

(b)     The claims against Global Closing seek damages that are not covered under the 2021 Policy's insuring agreement for professional services. The plaintiffs in the Escrow Account Litigation request payment based upon the return, restitution, and/or disgorgement of the funds provided to Global Closing. The Escrow Account Litigation therefore does not qualify as a potential obligation to pay a "Loss" as the term is defined under the 2021 Policy and, thus, does not qualify to trigger coverage under the 2021 Policy. *See* Ex. E, Professional Liability Coverage Part, Form PL990163 0414.

(c)     The claims against Global Closing are excluded from coverage under the 2021 Policy's insuring agreement for professional services because the plaintiffs in the Escrow Account Litigation allege damages based upon Global Closing gaining a profit, remuneration or pecuniary advantage to which it was not legally entitled; to wit: embezzling and/or misappropriating the escrow funds designated for the real estate closings. Under the 2021 Policy's exclusion for fraud/illegal profit and violation of law, there is no coverage for any Loss arising from, based upon, or attributable to the Insured gaining a profit, remuneration, or pecuniary advantage to which it was not legally entitled as evidenced by a final adjudication by a judge, jury, or arbitrator. *See* Ex. E, Professional Liability Coverage Part, Form PL990163 0414.

(d)     The claims against Global Closing are excluded from coverage under the 2021 Policy's insuring agreement for professional services because the plaintiffs in the Escrow Account Litigation allege damages based upon Global Closing acting with a fraudulent intent to embezzle and/or misappropriate the escrow funds designated for the real estate closings. Under the 2021 Policy's exclusion for fraud/illegal profit and violation of law, there is no coverage for any Loss arising from, based upon, or attributable to the Insured's fraudulent or criminal acts with actual knowledge of their wrongful nature or with intent to cause damage as evidenced by a final adjudication by a judge, jury, or arbitrator. *See* Ex. E, Professional Liability Coverage Part, Form PL990163 0414.

(e)     The claims against Global Closing are excluded from coverage under the 2021 Policy's insuring agreement for professional services because the plaintiffs in the Escrow Account Litigation allege damages based upon their loss of the funds provided to Global Closing. Under the 2021 Policy's exclusion for lost property, there is no coverage for any Loss arising from, based upon, or attributable to the actual physical loss of money in Global Closing's care, custody, or control. *See* Ex. E, Professional Liability Coverage Part, Form PL990163 0414.

(f)     The claims against Global Closing are excluded from coverage under the 2021 Policy's insuring agreement for professional services because the plaintiffs in the Escrow Account Litigation assert claims that arise out of an alleged shortage

of funds in Global Closing's escrow account. Under the 2021 Policy's exclusion for deceptive trade practices, there is no coverage for any Loss arising from, based upon, or attributable to deceptive trade practices such as the Insured using the funds from a real estate transaction: (i) for personal gain, or (ii) to satisfy the obligation of another real estate transaction. *See* Ex. E, Policy Change Endorsement, Form PL990236 0414.

(g)    The claims against Global Closing are excluded from coverage under the 2021 Policy's insuring agreement for professional services because the plaintiffs in the Escrow Account Litigation assert claims that arise out of Global Closing's alleged failure to comply with escrow instructions. Under the 2021 Policy's exclusion for escrow instructions, there is no coverage for any Loss arising from, based upon, or attributable to any actual or alleged, willful or intentional failure by an Insured to comply with escrow instructions. *See* Ex. E, Policy Change Endorsement, Form PL990236 0414.

(h)    The claims against Global Closing are excluded from coverage under the 2021 Policy's insuring agreement for professional services because the plaintiffs in the Escrow Account Litigation assert claims that arise out of Global Closing's alleged theft, conversion, commingling, embezzlement, or misappropriation of the escrow funds. Under the 2021 Policy's exclusion for misappropriation, there is no coverage for any Loss arising from, based upon, or attributable to any theft,

conversion, commingling, embezzlement, or misappropriation of any kind of escrow, trust, mortgage or any other kind or type of money, funds, securities, property, assets, or any negotiable instrument by any person; however, this exclusion shall not apply to the Defense Expenses for any Insured who did not commit, know or acquiesce in such Wrongful Act which is the basis of the Claim.

71.     Accordingly, Wesco contends that the 2021 Policy and 2022 Policy do not provide indemnity for an award of damages against Global Closing in the Escrow Account Litigation.

72.     There exists a bona fide actual, present and practical need for a declaration regarding coverage under the 2021 Policy and the 2022 Policy, and the rights and obligations of Wesco.

73.     The rights and obligations of Wesco under the 2021 Policy and 2022 Policy are dependent upon the facts or the law applicable to the facts affecting coverage under the 2021 Policy and 2022 Policy.

74.     Wesco, Global Closing, First American, Seacoast Bank, and Innovation & Design have an actual, present controversy in the subject matter described herein.

**WHEREFORE**, Plaintiff, Wesco Insurance Company, respectfully requests that this Court enter judgment in its favor and: (a) declare that Wesco has no obligation to indemnify Global Closing Company, LLC, and Benjamin Bell in the

Escrow Account Litigation; and (b) grant such other relief as the Court deems just and proper.

**COUNT IV: CLAIM FOR DECLARATORY JUDGMENT**
**(No Duty to Indemnify Global Closing for Treble Damages**
**in the Innovation & Design Action)**

75.     Wesco adopts and re-alleges the allegations contained in paragraphs 1 through 50 as though fully set forth herein.

76.     An actual, justiciable controversy has arisen over whether the 2021 Policy and/or 2022 Policy provides coverage for the treble damages sought by Innovation & Design against Global Closing in the Innovation & Design Action.

77.     Wesco contends that the 2021 Policy and 2022 Policy do not provide coverage for the treble damages sought against Global Closing in the Innovation & Design Action because: (i) the 2021 Policy defines the term "Loss" to exclude coverage for fines, penalties, or matters uninsurable as a matter of public policy, and (ii) treble damages are uninsurable as a matter of public policy under Florida law. *See Country Manors Ass'n, Inc. v. Master Antenna Sys., Inc.*, 534 So. 2d 1187, 1195-96 (Fla. 4th DCA 1988) ("treble damages are uninsurable as against public policy").

78.     Accordingly, Wesco contends that the 2021 Policy and 2022 Policy do not provide indemnity for an award of treble damages against Global Closing in the Innovation & Design Action.

79.     There exists a bona fide actual, present and practical need for a declaration regarding coverage for treble damages under the 2021 Policy and 2022 Policy and the rights and obligations of Wesco.

80.     The rights and obligations of Wesco under the 2021 Policy and 2022 Policy are dependent upon the facts or the law applicable to the facts affecting coverage under the 2021 Policy and 2022 Policy.

81.     Wesco, Global Closing, and Innovation & Design have an actual, present controversy in the subject matter described herein.

**WHEREFORE**, Plaintiff, Wesco Insurance Company, respectfully requests that this Court enter judgment in its favor and: (a) declare that Wesco has no obligation under the 2021 Policy and 2022 Policy to indemnify Global Closing Company, LLC, and Benjamin Bell for an award of treble damages in favor of Innovation & Design in the Innovation & Design Action; and (b) grant such other relief as the Court deems just and proper.

Respectfully submitted,

**KAPLAN ZEENA LLP**
2 South Biscayne Boulevard
Suite 3050
Miami, Florida 33131
Telephone: (305) 530-0800
Facsimile: (305) 530-0801


By: /s/ *Daniel M. Hirschman*
    JAMES M. KAPLAN
    Florida Bar No.:921040
    james.kaplan@kaplanzeena.com
    elizabeth.salom@kaplanzeena.com
    DANIEL HIRSCHMAN
    Florida Bar No.: 44177
    daniel.hirschman@kaplanzeena.com
    cheryl.mingo@kaplanzeena.com